**SCHEPER KIM & HARRIS LLP**
DAVID C. SCHEPER (State Bar No. 120174)
dscheper@scheperkim.com
JEAN M. NELSON (State Bar No. 150856)
jnelson@scheperkim.com
GREGORY A. ELLIS (State Bar No. 204478)
gellis@scheperkim.com
ALEXANDER H. COTE (State Bar No. 211558)
acote@scheperkim.com
601 West Fifth Street, 12th Floor
Los Angeles, CA  90071-2025
Telephone: (213) 613-4655
Facsimile:  (213) 613-4656

**Attorneys for Plaintiff**
**CELLCO PARTNERSHIP d/b/a Verizon Wireless**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,<br><br>Plaintiff,<br><br>v.<br><br>TORO RIDE, INC.; KAREN KEVIN GALSTIAN and DOES 1-10,<br><br>Defendants. | CASE NO. 2:15-CV-1187<br><br>**COMPLAINT FOR FRAUD AND BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless")
states the following for its complaint against Toro Ride, Inc., Karen Kevin Galstian
and Does 1-10:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action under
28 U.S.C. § 1332 because the parties are citizens of different states and the amount
in controversy exceeds $75,000, exclusive of interest and costs.

2.      Verizon Wireless is a partnership consisting of

- GTE Wireless Incorporated, a Delaware corporation with its principal place in New Jersey;
- Bell Atlantic Mobile Systems LLC, a limited liability company with a single member: MCI Communications Services, Inc., a Delaware corporation with its principal place of business in New Jersey;
- JV PartnerCo, LLC, a limited liability company with a single member: Verizon Americas Inc., a Delaware corporation with its principal place of business in New Jersey; and
- PCS Nucleus, L.P., a limited partnership with two partners: (a) JV PartnerCo, LLC and (b) Verizon Holdings LLC, a limited liability company with a single member: Verizon Americas Inc.

Accordingly, Verizon Wireless is a citizen of Delaware and New Jersey for purposes of determining citizenship under Section 1332.

3.    Defendant Toro Ride, Inc. is a California corporation with its principal place of business in Glendale, California.

4.    Defendant Karen Kevin Galstian is an individual and a citizen of California. Collectively, Galstian and Toro Ride are "Defendants."

5.    This Court has personal jurisdiction over Defendants because they are California citizens that conduct business within the state and the acts complained of occurred and are occurring in interstate commerce in this District.

6.    Venue is properly laid in this District under 28 U.S.C. § 1391 as the acts complained of occurred and are occurring in interstate commerce in the Central District of California and as Defendants live and are headquartered in this District.

## THE PARTIES

7.    Verizon Wireless is a nationwide provider of cellular phone and other mobile technology services.

8.    Toro Ride was formed on July 26, 2013, and purports to provide a ride sharing service to individuals in the Los Angeles area. Toro Ride purports to be a

1  luxury competitor of similar modern ride sharing services, such as Uber and Lyft.

2      9.     Defendant Galstian is an individual who purports to be the Chief

3  Executive Officer and/or President of Toro Ride.

4      10.     Galstian is also a criminal defendant in *United States v. Galstian et al.*,

5  United States District Court for the Southern District of California Case No. 13-CR-

6  3481. The September 19, 2013 indictment charged Galstian, along with seventeen

7  other defendants, for conspiracy to commit bank fraud (18 U.S.C. § 1349) and

8  aggravated identity theft (18 U.S.C. § 1028A). According to a press release issued

9  by the FBI, Galstian led a conspiracy of defendants in a "scheme to defraud Bank of

10 America of more than $600,000 by writing bad checks" by using "stolen identities"

11 and multiple bank accounts to further the fraud. Galstian pled guilty to the

12 conspiracy charge on January 16, 2014, and according to the Southern District's

13 court docket, is awaiting sentencing on March 30, 2015.

14     11.     Verizon Wireless is ignorant of the true names and capacities of the

15 defendants sued herein as Does 1 through 10, and therefore Verizon Wireless sues

16 these defendants by such fictitious names. Verizon Wireless will amend this

17 complaint to allege said defendants' true names and capacities when ascertained.

18 Verizon Wireless is informed and believes that each of the fictitiously named

19 defendants is responsible in some manner for the occurrences herein alleged, and

20 that Verizon Wireless's injuries were proximately caused by the acts and/or

21 omissions of said fictitiously named defendants.

22                          **FACTUAL BACKGROUND**

23     12.     Verizon Wireless is the victim of a multimillion dollar fraudulent

24 scheme perpetuated by Defendants.

25     13.     Defendants acquired over thirty-four thousand iPhones from Verizon

26 Wireless pursuant to the parties' February 4, 2014 "Verizon Wireless

27 National/Major Account Agreement." A true and correct copy of the Agreement

28 (with its amendments) is attached hereto as Exhibit A.

14.     In executing the Agreement, Defendants expressly agreed that they would use those iPhones exclusively for their ridesharing business.

15.     In violation of the Agreement, and contrary to their express representation to Verizon Wireless, Defendants instead misappropriated those iPhones and resold them to third parties outside the United States.

16.     As is typical within the wireless industry, Verizon Wireless subsidized each iPhone acquired by Defendants, so that Defendants' cost to acquire the iPhones was close to or equal to $0. The unsubsidized price of the iPhones exceeds $500, and on information and belief, the iPhones can be resold to third parties, including third parties in other countries, for substantially more than the price, if any, Defendants paid to Verizon Wireless.

17.     In exchange for Verizon Wireless' subsidy, Defendants promised to maintain and pay for Verizon Wireless service on each iPhone for at least two years.

18.     Thus, although Defendants have sold the iPhones to third parties, they remain responsible for paying the monthly service fee for Verizon Wireless service on each of those iPhones.

19.     On information and belief, Defendants have no means to pay for these monthly service fees, apart from the money they generate by selling Verizon Wireless iPhones to third parties. Accordingly, Defendants must constantly acquire and resell more and more iPhones in order to cover the service fees of the iPhones they have previously sold.

20.     Indeed, Defendants' acquisition of iPhones follow this pattern. Specifically, Defendants ordered an average of less than 100 iPhones per month between February and September 2014, then increased to an average of nearly 5,000 for the months of October through December 2014, and then tripled the quantity in January 2015 to over 16,000.

21.     Moreover, in February 2015, Defendants asked to increase their orders again, claiming to need 25,000 iPhones for their purported ridesharing business in

- 4 -
COMPLAINT

1  February and another 50,000 in March 2015.

2      22.   Verizon Wireless shipped more than 34,000 iPhones to Defendants

3  before it came to fully understood Defendants' scheme in February 2015 and ceased

4  sales to Defendants.

5      23.   There is only one way for such a scheme to end: with Defendants

6  disappearing with the proceeds of their overseas sales, leaving the victim with

7  nothing. In this case, that means leaving Verizon Wireless with millions of dollars in

8  lost iPhones and millions more in unpaid monthly service fees.

9      24.   On information and belief, Defendants will continue to sell their

10 remaining stock of Verizon Wireless iPhones overseas, and then abscond with the

11 proceeds of those sales, depriving Verizon Wireless of the funds it is due under the

12 Agreement, unless Defendants' fraudulent scheme is stopped by this Court.

13                        **FIRST CAUSE OF ACTION**

14                                **Fraud**

15                        **(Against All Defendants)**

16     25.   Verizon Wireless repeats and incorporates by reference the allegations

17 in paragraphs 1-24 as if fully set forth here.

18     26.   Galstian, acting as CEO and/or President of Toro Ride and for his own

19 benefit, repeatedly represented that Defendants would use the iPhones that

20 Defendants acquired from Verizon Wireless solely in connection with Toro Ride's

21 ride share business.

22     27.   These representations were made at various times during the parties'

23 relationship, including without limitation:

24     • In executing the Agreement, Galstian explicitly agreed that Toro Ride

25       would "purchase wireless service and equipment at discounted prices

26       *for its employees' business* use and machine-to-machine data service

27       *for its own business use*" and would not resell the equipment or service

28       to third parties. (*See* Ex. A at 1 (emphasis added).)

- 5 -
COMPLAINT

- During a October 3, 2014 face to face meeting with three Verizon Wireless employees responsible for the Toro Ride account – Ashley Stanton (Director of Business Sales), Cynthia Bell (Associate Director of Business Sales) and Talin Isagholi (Business Sales Manager ) – Galstian again represented that he intended to use the iPhones for Toro Ride's business. In particular, in order to justify Defendants' radical increase in the order volume, Galstian represented that Toro Ride had a business plan for the deployment of the iPhones in a number of cities throughout California, as part of a state-wide "launch" planned for the end of the year. Galstian claimed that Toro Ride's statewide launch would require an additional 7000-10,000 iPhones by year's end.

- During a November 20, 2014 face to face meeting with Luis Cruz (Verizon Wireless's Southern California Regional President), Pete Antonic (Verizon Wireless's Acting Director of Business Sales), Bell and Isagholi at Galstian's office in Glendale, Galstian again represented that he intended to use the iPhones for Toro Ride's business. In particular, Galstian claimed to have been working with the California Governor's office to offer free rides to passengers on New Year's Eve as part of Toro Ride's statewide launch. Galstian also claimed to be planning a nationwide launch of Toro Ride in the next three months. According to Galstian, Defendants therefore required even more iPhones from Verizon Wireless in order to meet these purported business plans.

28. Defendants' representations were false. The true reason Defendants ordered tens of thousands of iPhones from Verizon Wireless was so that Defendants could re-sell the iPhones in foreign countries, not for Toro Ride's business use. Indeed, more than eleven thousand of the iPhones delivered to Galstian have been located in countries where Toro Ride does not operate, including Vietnam, China,

1 │ Saudi Arabia and Iraq.

2 │      29.    Defendants made these false representations without any intent to

3 │ honor them, and knew they were false at the time they made them.

4 │      30.    Verizon Wireless actually and reasonably relied on Defendants'

5 │ misrepresentations, believing them to be true.

6 │      31.    As a result of that reliance, Verizon Wireless delivered over 34,000

7 │ heavily subsidized iPhones to Defendants, many thousands of which Defendants

8 │ have since resold to third parties operating outside the United States.

9 │      32.    Accordingly, Verizon Wireless has suffered damages in an amount to

10 │ be proven at trial, but which will include, at a minimum, the subsidies Verizon

11 │ Wireless provided Toro Ride in reliance on its false representations, a sum which

12 │ exceeds $19,000,000 in damages.

13 │ **SECOND CAUSE OF ACTION**

14 │ **Breach of Contract**

15 │ **(Against Toro Ride)**

16 │      33.    Verizon Wireless repeats and incorporates by reference the allegations

17 │ in paragraphs 1-32 as if fully set forth here.

18 │      34.    On or about February 4, 2014, Verizon Wireless entered into an

19 │ agreement, entitled "Verizon Wireless National/Major Account Agreement," with

20 │ Toro Ride. (*See generally* Ex. A.)

21 │      35.    Verizon Wireless fulfilled all of its obligations under the Agreement

22 │ and fully performed as required by the Agreement.

23 │      36.    Pursuant to the terms of the Agreement, Toro Ride agreed to acquire

24 │ iPhones exclusively for use in its ride sharing business. Specifically, the Agreement

25 │ provides:

26 │     This Agreement allows Customer to purchase wireless service and
   │     equipment at discounted prices for its employees' business use and
27 │     machine-to-machine data service for its own business use.

28 │ (*See* Ex. A at 1.)

37.     The agreement further provides:

10. **No Reselling or Purchases by Third Parties:** This Agreement specifically contemplates the purchase of Wireless Service by Corporate Subscribers and Employee Subscribers of Customer and Customer's qualifying parents and affiliates only as well as M2M Lines for Customer's business needs. Except upon written agreement between the Parties, third parties (including agents, contractors or contract employees, and members or franchisees of Customer or of Customer's qualifying parents and affiliates) may not purchase Wireless Service or Equipment under this Agreement nor may Customer resell the Wireless Service or use M2M Lines bundled with or embedded into products or services that it sells to its customers.

(*See* Ex. A at ¶ 10.)

38.     As the plain language of the Agreement states, Toro Ride agreed as an express condition of its contract to acquire Verizon Wireless's subsidized iPhones solely for use in its business.

39.     In breach of this obligation, Toro Ride has resold thousands of the iPhones it acquired from VZW in other countries, including Vietnam, China, Saudi Arabia and Iraq.

40.     If Toro Ride continues to sell the iPhones to third parties in violation of the Agreement, it will cause irreparable harm to Verizon Wireless. Accordingly, Verizon Wireless is entitled to preliminary and permanent injunction preventing Toro Ride from selling any of more of the iPhones it acquired from Verizon Wireless to third parties, including third parties in other countries.

41.     The Agreement also provides that Verizon Wireless has discretion "[a]t any time during the term of this Agreement" to "require Customer to provide a deposit to secure payment based upon Customer's creditworthiness or payment history with Verizon Wireless." (*See* Ex. A at ¶ 13.)

42.     Verizon Wireless did not initially require Toro Ride to pay a deposit for the more than 16,000 iPhones it acquired in January 2015. However, on February 8, 2015 and again on February 11, 2015, Verizon Wireless sent Defendants a written demand for a $3.3 million deposit, calculated as $200 for each iPhone Toro Ride acquired from Verizon Wireless in January 2015. Attached hereto as Exhibit B is a

1 | true and correct copy of Verizon Wireless's February 11, 2015 letter demanding the
2 | deposit.

3 |      43.    The deposit was due on February 15, 2015.

4 |      44.    In breach of the Agreement, Toro Ride failed to pay this deposit as
5 | requested by Verizon Wireless.

6 |      45.    This breach entitles Verizon Wireless to monetary damages in an
7 | amount to be proven at trial, but which will include, at a minimum, the subsidies
8 | Verizon Wireless provided Toro Ride in reliance on its false representations, a sum
9 | which exceeds $19,000,000 in damages.

10 | **PRAYER FOR RELIEF**

11 |     WHEREFORE, Verizon Wireless therefore respectfully requests that the
12 | Court grant the following relief:

13 |     A. For a preliminary and permanent injunction prohibiting Defendants and
14 |         all agents, officers, employees, representatives, successors, assigns,
15 |         attorneys, and all other persons acting for, with, by, through, or under
16 |         authority from Defendants, or in concert or participation with
17 |         Defendants, and each of them, from selling, gifting, or otherwise
18 |         transferring the iPhones the Defendants acquired from Verizon
19 |         Wireless to any third party;

20 |     B. For damages in an amount to be proven at trial, but in no event any less
21 |         than $19,000,000;

22 |     C. For prejudgment and post-judgment interest on the foregoing damages;
23 |         and

24 |     D. For such other and further relief as the Court deems just and proper.

25

26

27

28

DATED: February 18, 2015     SCHEPER KIM & HARRIS LLP
ALEXANDER H. COTE

By:   /s/ Alexander H. Cote
       Alexander H. Cote
       Attorneys for Plaintiff
       CELLCO PARTNERSHIP d/b/a
       VERIZON WIRELESS

1

## **DEMAND FOR JURY TRIAL**

2        Plaintiff Cellco Partnership d/b/a Verizon Wireless hereby demands that all

3  issues be determined by jury.

4  DATED: February 18, 2015      SCHEPER KIM & HARRIS LLP

5                             ALEXANDER H. COTE

6

7

8                         By: /s/ Alexander H. Cote

9                            Alexander H. Cote

                             Attorneys for Plaintiff

10                         CELLCO PARTNERSHIP d/b/a

                             VERIZON WIRELESS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28